# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 17, 2011 Session

## STATE OF TENNESSEE v. JUSTIN KENNETH BOLDUS

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2009-CR-708    Larry J. Wallace, Judge**

_____

**No. M2011-00036-CCA-R3-CD - Filed August 11, 2011**

The defendant, Justin Kenneth Boldus, pleaded guilty in Dickson County Circuit Court to one count of vehicular homicide by recklessness, *see* T.C.A. § 39-13-213(a)(1) (2006), and one count of leaving the scene of an accident involving death, *see id.* § 55-10-101. The trial court imposed consecutive sentences of four years and one year to be served in the Department of Correction. On appeal, the defendant argues that the trial court erred by imposing consecutive sentences and by denying alternative sentencing. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, Justin Kenneth Boldus.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Kelly Jackson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On September 26, 2009, Tennessee State Troopers responded to the scene of a single-car accident on Highway 48 in Dickson County. As they approached the scene, they found the then-nineteen-year-old defendant walking down the highway away from the accident. When questioned, the defendant said that he needed to talk to his parents and fled to a nearby wooded area where he was apprehended a short time later. At the scene, officers discovered the victim, Michael B. Hugel, dead from injuries sustained in the collision. Blood alcohol testing performed on the defendant revealed a blood alcohol content of .11 percent. Likewise, a toxicology screening of the victim's blood revealed a blood alcohol content of

.04 percent and that the victim had smoked marijuana sometime that night.

On December 7, 2009, a Dickson County grand jury indicted the defendant on one count of vehicular homicide by intoxication and on one count of leaving the scene of an accident involving death. On May 20, 2010, the defendant pleaded guilty to an amended charge, in count one, of vehicular homicide by recklessness and, in count two, to leaving the scene of an accident involving death. Following his guilty pleas, the trial court allowed the defendant to remain on bond pending the sentencing hearing which it scheduled for September 15, 2010.

At the sentencing hearing, the State presented victim impact testimony from the victim's grandmother and sister. Both witnesses told of the great loss suffered by their family by the victim's death. Neither witness could understand how the defendant could walk away from the accident without trying to assist the victim. The victim's sister, Tabatha Derry, told the defendant that she had forgiven him but said that no one should be "killed over foolishness" such as the underage drinking and driving undertaken by the defendant.

The defendant's father, Keith Boldus, testified that the defendant had worked with him for over two years at Midas in Nashville and would have continued employment if granted alternative sentencing.[1] Mr. Boldus said that everyone had suffered a loss with the victim's death because the victim was also a close friend to his family. He stated that his son was "definitely" remorseful and that he had "followed the rules" since the accident.

The defendant testified that he wanted to "reach out" to the victim's family but was advised not to do so by counsel. He said that he was "truly sorry" and missed the victim every day. Regarding why he walked away from the accident scene, the defendant explained that he was thrown from the car and could not remember what had happened when he woke up on the ground. He recalled screaming the victim's name and shaking his leg. The defendant said that when the victim did not respond, the defendant "freaked out" and started "running from what [he had] just [done]." The defendant testified that he had not consumed any alcohol since the accident.

The trial court questioned the defendant about his assertion that he had not consumed alcohol since the accident because the defendant told his probation officer that he had last consumed alcohol on his twentieth birthday just weeks after the accident. The defendant could not explain how that statement came to be included in the presentence report. Upon questioning about his prior criminal history, the defendant explained that he

---

[1] The presentence report indicated that the defendant had worked steadily and consistently since attaining working age.

was convicted of driving without a license once when he left his wallet at home and that he also had been cited for failing to wear his seatbelt.

The defendant said that he "felt bullet proof" before the accident and admitted to drinking and driving on previous occasions. He said that he had "changed a hundred percent," was ready "to step up," and was "not wild anymore." Testimony at the sentencing hearing and evidence in the presentence report also showed that the defendant was financially supporting his infant daughter, working over 50 hours per week, and had successfully complied with all conditions of his release while on bond pending sentencing. Included in his bond conditions was the defendant's wearing a "SCRAM" bracelet which documented that the defendant had not consumed alcohol since its placement in December 2009.

The trial court imposed sentences of four years and one year for the vehicular homicide and leaving the scene of an accident convictions, respectively. The trial court further concluded that the defendant was a dangerous offender qualifying for consecutive sentencing and ordered the sentences to be served consecutively for a total effective sentence of five years. Concerning the defendant's request for alternative sentencing, the trial court considered the defendant's criminal history and continued criminal behavior as shown by his admitted underage consumption of alcohol and previous incidents of drinking and driving. Based upon these considerations, the trial court found that the defendant was "not suitable for probation" and denied all forms of alternative sentencing.

When considering challenges to the length and manner of service of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In making its sentencing decision, the trial court must consider:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

Initially, the State asks that we presume that the trial court's ruling is correct in light of the defendant's failure to include a transcript of the guilty plea submission hearing in the record on appeal. In the absence of the transcript, the State argues that we are precluded from conducting our de novo review of the sentence. *See* T.C.A. § 40-35-210(b). Although it is true that this court has determined that when a trial court approves a defendant's guilty plea and then imposes a sentence that is challenged on appeal, the appellate court may need the transcript of the plea submission hearing as a means of knowing the nature and circumstances of the offense, *see, e.g.*, *State v. Keith Lemont Farmer*, No. M2006-00707-CCA-R3-CD (Tenn. Crim. App., Nashville, Mar. 28, 2007), the need for information about the nature and circumstances of the offense does not equate to a per se requirement that the plea submission hearing transcript be included in the record as a condition precedent to appellate review. We further note that on May 31, 2011, after the case

was heard at oral argument, this court granted the defendant's motion to supplement the record with a transcript of the plea submission hearing. On June 14, 2011, the defendant supplemented the record with the transcript of the hearing. Our review of the plea submission hearing, however, reveals that there was no stipulation of proof offered at the hearing that would lend any additional insight into the nature and circumstances of the convicted offenses. Furthermore, we are able to determine the nature and circumstances of the offense via the presentence report, which we conclude affords this court an adequate basis for reviewing the defendant's sentence.

Turning first to the defendant's argument that the trial court erred by imposing consecutive sentences, Tennessee Code Annotated section 40-35-115 provides that when a defendant is convicted of multiple crimes, the trial court, in its discretion, may order the sentences to run consecutively if it finds by a preponderance of the evidence that a defendant falls into one of seven categories listed in Code section 40-35-115(b). They are:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration

-5-

of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b) (2006). In *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995), the supreme court imposed two additional requirements for consecutive sentencing when the "dangerous offender" category, *see* T.C.A. § 40-35-115(b)(4), is used; the court must find consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. *Wilkerson*, 905 S.W.2d at 937-39; *see State v. Imfeld*, 70 S.W.3d 698, 707-08 (Tenn. 2002).

Initially, we note that the trial court gave appropriate consideration to the principles of sentencing in making its determination and, specific to the application of the dangerous offender factor, made the requisite *Wilkerson* findings. In ruling the defendant a dangerous offender, the trial court found that the defendant drove at a high rate of speed while "excessive[ly] intoxicated" with passengers in his car. The record showed that the defendant was traveling approximately 78 miles per hour in a 55 miles per hour zone and that his blood alcohol level was over five times the legal limit of a driver his age. *See* T.C.A. § 55-10-415(a)(1)(A) (providing that an underage driver may not operate a motor vehicle when his or her blood alcohol level exceeds .02 percent). The presentence report also reveals that the defendant's brother and the victim were in the car. In preparation of the presentence report, the defendant admitted to consuming alcohol illegally on his birthday, just weeks after the fatal accident. Significantly, for purposes of applying the dangerous offender factor, the defendant also admitted at the sentencing hearing that he had driven while drinking on previous occasions without getting "caught." The trial court characterized the defendant's previous driving history of traffic violations and one accident involving property damage as behavior that "continued to lead up" to the present offenses. The record supports these findings and the imposition of consecutive sentences in this case. *See, e.g., State v. Harvey Philip Hester*, No. 03C01-9704-CR-00144 (Tenn. Crim. App., Knoxville, Mar. 22, 2000) (stating defendant's escalating pattern of criminal behavior justified consecutive sentencing

based upon dangerous offender finding).

Next, turning to the defendant's allegation that the trial court erred by denying alternative sentencing, it is true that as the recipient of a sentence of ten years or less, the defendant was eligible for probation. *See* T.C.A. § 40-35-303(a). The defendant bore the burden, however, of establishing his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. *State v. Grear,* 568 S.W.2d 285, 286 (Tenn. 1978).

At multiple times throughout the trial court's sentencing determination, the court voiced concern that the defendant was "not learning his lesson" or had "never really had to suffer any consequences for his actions" because he had engaged in an escalating pattern of dangerous driving behavior, had continued to consume alcohol although underage, and had admitted to drinking and driving on previous occasions. The trial court questioned the genuineness of the defendant's remorse and opined that the defendant was only remorseful out of concern for his punishment. Based upon these considerations, the trial court ruled the defendant "not suitable for probation" and denied all forms of alternative sentencing. We agree that the defendant's continued use of alcohol while underage and the pattern of escalating behavior culminating in this offense indicative in his criminal history casts doubt on the defendant's potential for rehabilitation. *See, e.g., State v. Elizabeth Martin Patrick Scalf*, No. E2008-01150-CCA-R3-CD (Tenn. Crim. App., Knoxville, July 9, 2009), *perm. app. denied* (Tenn. Dec. 12, 2009) (holding that defendant's history of driving offenses culminating in vehicular homicide warranted denial of alternative sentencing). Accordingly, we affirm the trial court's denial of alternative sentencing.

*Conclusion*

Discerning no error in the trial court's sentencing determination, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE

-7-